UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-20068-CR-LENARD/Turnoff

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

DAVON MCKENZIE,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the court upon Defendant's Corrected Motion to Suppress Identification. **[DE 19]**. This matter was referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida. **[DE 21]**. A hearing on this matter was held on April 13, 2011. **[DE 32]**. Upon review of written and oral arguments, the testimonial and record evidence, the applicable law, the court record, and being otherwise duly advised in the premises, the undersigned makes the following findings of fact and conclusions of law.

### I. Factual Background

On September 4, 2010, Mr. John Green went to 4101 NW 24th Avenue, Miami, Florida, to purchase crack cocaine. At the house were Mr. Luis Malave and Defendant Davon McKenzie, both of whom Defendant had seen before at that location. Green attempted to purchase $15.00 worth of drugs when Defendant proceeded to go through Green's pockets at gunpoint. Defendant took Green's wallet and handed it to Malave who removed $20.00 therefrom. Green was then told to

Case No.: 11-20068-CR-LENARD/Turnoff

leave.

While fleeing in his bicycle, Green attempted to see the house number but ultimately forgot it. He tried to call the police from a nearby store, but the payphone was not working. He then rode to another store in the area of NW 49th Street and 22nd Avenue and placed a call to 911. The call was received at about 11:38 p.m. Green told the dispatcher that he had been robbed at gunpoint by a white Hispanic man and a black man at the corner house on NW 41st Street. City of Miami police officers were sent to respond.

Officer Barbara Williams responded to Green's location at about 11:50 p.m. Green described the black male as being in his early 20's, of medium build with a dark complexion and short haircut, about 5'4", and wearing a white T-shirt and jeans. He described the Hispanic white male as being around 22 years old, about 5'9" and 120 lbs., with long curly black hair, and wearing a white T-shirt and a khaki bottom. Green told Off. Williams that he was riding his bicycle in the area when Defendant flagged him down with a gun and took him to the corner house where Defendant and Malave robbed him.

Based upon Green's description of the perpetrators, Off. Williams issued a BOLO alert and established a perimeter extending from NW 41st Street to 43rd Street and from 22nd Avenue to 24th Avenue. After Off. Williams issued the alert, Sergeant Anthony Rodriguez saw two men matching the description given by Green, but they fled from him.

Detective Jorge Arana also responded to the area and was briefed by Off. Williams. Det. Arana testified that he spoke to Green who provided a different version of the events. Green told Det. Arana that he had ridden his bike to the crack house and knocked on the rear door when Malave and

Case No.: 11-20068-CR-LENARD/Turnoff

Defendant proceeded to rob him at gunpoint. Although Green did not remember the house number, he described the house as being orange with white trim and black wrought iron doors and windows. Green directed Det. Arana to 4101 NW 24th Avenue, which matched his description. Det. Arana then took Green back to the area of NW 49th Street and 22nd Avenue and returned to the house. Once at the house, Det. Arana saw a light on in a bedroom and a male with medium-length dreadlocks. The man ducked when he saw Det. Arana. Det. Arana proceeded to knock on the front door. Eventually, the door opened from the inside where Det. Arana saw two males. He asked them to exit the house and conducted a protective sweep. The two subjects were detained.

Det. Arana further testified that, at approximately 2:00 a.m., he brought Green back to the house to see if Green recognized anyone. According to his testimony, Det. Arana did not tell Green that anyone had been arrested in connection with the robbery or that anyone was suspected of the robbery or even that he had to identify anyone. When Det. Arana arrived at the house with Green, Malave and Defendant were already seated in separate police cars across the street from the house. Det. Arana parked his patrol car about two car-lengths away facing the same direction as the other patrol cars. Det. Arana used his headlights to provide illumination while Green remained inside his police car.

The subjects were shown to Green one at a time. They both had their hands behind their back but no handcuffs were visible. Green first saw Malave and identified him as "Chico," the man who took his money. Green then saw who he identified as the man with the gun. Green told Det. Arana that he was 100% positive of the identifications because he had seen the two men before. According to Det. Arana, Green appeared to be coherent and lucid throughout.

Case No.: 11-20068-CR-LENARD/Turnoff

## II. Summary of Claims

Defendant argued that the Court should suppress the out-of-court identification of Defendant made by Green, as well as any in-court identification Green might make, on the grounds that the show-up conducted in this case violated his constitutional right to due process. In this connection, Defendant argued that the three-hour lapse from the time of the alleged robbery to the time of the show-ups was impermissible because it allowed the alleged victim to see the alleged robbers being taken out of the house the victim claimed was the scene of the robbery.

## III. Discussion

The Supreme Court has recognized a defendant's due process right to exclude identification testimony resulting from unnecessarily suggestive procedures that could lead to mistaken identification. See, Stovall v. Denno, 388 U.S. 293 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987). In Neil v. Biggers, 409 U.S. 188, 198 (1972), the Supreme Court noted that, "[i]t is the likelihood of misidentification which violates a defendant's right to due process."

A two-step analysis is employed by Courts in assessing the admissibility of identification testimony. First, the Court must determine whether the original identification procedure was unduly suggestive. United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001). The burden is on Defendant to show that the procedure was unduly suggestive. Brown v. Secretary, Dept. of Corrections, No. 09-cv-785-Orl-28KRS, 2011 WL 322463, at *5 (M.D. Fla. Jan. 31, 2011). If the burden is met, then the Court must consider whether, under the totality of the circumstances, the identification was, nonetheless, reliable. Diaz, 248 F.3d at 1102. Thus, an identification derived from unnecessarily

Case No.: 11-20068-CR-LENARD/Turnoff

suggestive procedures need not be automatically excluded so long as the totality of the circumstances indicates that the identification was reliable and does not pose a substantial risk of misidentification at trial. In assessing reliability, the Court considers the following five factors set forth in Biggers: (1) the opportunity of the witness to view the defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty of the identification; and (5) the time between the crime and the identification. Biggers, 409 U.S. at 199-200. Courts have focused their analysis on the reliability of the identification testimony. Id. at 198.

Applying the first prong, the Court finds insufficient evidence to support Defendant's allegation that the show-up was unduly suggestive. "Although show-ups are widely condemned, immediate confrontations allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons. Therefore, show-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation." Johnson v. Dugger, 817 F.2d 726 (11th Cir. Fla. 1987) (internal citations omitted). "An unduly suggestive showup is one engineered by the police and made to suggest to the witness that the person to be viewed is a suspect." Key v. McNeil, 08cv379-WS/WCS, 2010 WL 5811481, at *6, (N.D. Fla. Dec. 27, 2010).

Here, the show-up was conducted where the robbery occurred. This fact, alone, does not render the show-up suggestive. See Dempsey v. Town of Brighton, 749 F.Supp. 1215, 1225 (W.D.N.Y. 1992) (finding no error where police transported armed robbery suspect to crime scene for show-up). In fact, "[c]ourts have time and again approved on-the-scene showups, occurring

Case No.: 11-20068-CR-LENARD/Turnoff

reasonably soon after the crime, as one of the best ways not only to catch the criminal but also to exonerate the innocent." Id. (citations omitted). Contrary to Defendant's argument, Green was not present when Defendant was taken out of the house. By the time Det. Arana arrived with Green, Defendant was across the street from the house.

While Green was sitting in Det. Arana's police car, the subjects were individually presented to him. The manner in which the subjects were presented to Green for identification was not suggestive. See Blanco v. Singletary, 943 F.2d 1477, 1508-09 (11th Cir. 1991) (finding that identification of a single individual was not intrinsically suggestive); Scarborough v. Crosby, No. , 2005 WL 1051096, at *11 (M.D. Fla. Mar. 31, 2005) (finding that police did not tell victim she would be viewing one of the robbers when they asked her at the hospital to view a suspect and she positively identified defendant's face, clothing, and shoes). Defendant's hands were behind his back but no handcuffs were visible. Defendant provided no legal support that unseen handcuffs would be suggestive. United States v. Walker, 201 Fed. App'x 737, 741 (11th Cir. 2006).

Defendant has failed to produce sufficient evidence to support his assertion that the identification procedure itself was unduly suggestive. No evidence was presented tending to indicate that the police officers who were present at the show-up directed Green to any subject in particular or that Defendant was identified by law enforcement as a suspect in a particular case. Further, there was no indication that Green made his identification as a result of explicit or implicit suggestions from the police. Thus, because the Court finds insufficient evidence to support Defendant's claim that the show-up was unduly suggestive, the Court need not reach the second prong of the analysis. See, Williams, 826 F. 2d 1018 (when a defendant fails to demonstrate that an identification

Case No.: 11-20068-CR-LENARD/Turnoff

procedure is unduly suggestive, the inquiry ends, and the court is not required to proceed to the second prong of the analysis).

Notwithstanding, even assuming the identification procedure was unduly suggestive, the identification was reliable. Consideration of the Biggers factors establishes that there was not a substantial likelihood of irreparable misidentification given the totality of the circumstances in the instant case. The record established that Green had sufficient opportunity to observe Defendant, whom he had seen before, at close proximity and to provide a fairly accurate description that matched closely to Defendant's actual description. Moreover, Green indicated that he was certain of the identification at the time he made it, which was close in time to when the crime occurred. See United States v. Burke, 738 F.2d 1225, 1229 (11th Cir.1984) (holding that a suggestive identification was nonetheless reliable where, *inter alia*, the witness was in the defendant's "presence long enough for her to closely observe him," and only "two months elapsed between the first meeting and the confrontation"); See O'Brien v. Wainwright, 738 F.2d 1139, 1141-42 (11th Cir.1984) (holding that an impermissibly suggestive photo lineup did not taint a later identification where, "[a]lthough [the victim] only observed the burglar for a matter of seconds, [he] had a closeup view . . . of the burglar's face in a well-lighted room" and the time that had elapsed between the crime and the photo lineup was less than one day). Under these circumstances, the identification was not unreliable.

For the reasons set forth herein, it is **RESPECTFULLY RECOMMENDED** that defendant's Motion to Suppress Identification **[DE 19]** be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard within fourteen (14) days of receipt. Failure

Case No.: 11-20068-CR-LENARD/Turnoff

to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. <u>Resolution Trust Corp. v. Hallmark Builders, Inc.</u>, 996 F. 2d 1144 (11th Cir. 1993); <u>LoConte v. Dugger</u>, 847 F. 2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida this 12 day of April 2011.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Honorable Joan A. Lenard
All counsel of record